# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ANISA INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | |
| AMYRIS CLEAN BEAUTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Anisa International, Inc. ("Plaintiff"), by and through its undersigned counsel, and files this Complaint for Damages against Amyris Clean Beauty, Inc. ("Defendant"), showing the Court as follows:

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the action is between a Georgia corporation (Plaintiff) and a foreign corporation (Defendant) and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

## VENUE

2.      Venue is proper in this Court because a significant portion of the alleged violations of laws forming the basis of the claims asserted in this Complaint

for Damages occurred in the northern region of the State of Georgia, which is located in the territory of the Atlanta District of the United States District Court for the Northern District of Georgia, the same causing damages to Plaintiff, a Georgia corporation operating within this same district.

## PARTIES

3.      Plaintiff, Anisa International, Inc., is a corporation organized under the laws of the State of Georgia with its principal place of business in Fulton County, Georgia, and is authorized to conduct business in the State of Georgia, as it does on a regular and consistent basis at all times relevant to this dispute.

4.      Defendant, Amyris Clean Beauty, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business in Emeryville, California.  Defendant has actively conducted business in the State of Georgia and/or has entered contracts for work to be performed in the State of Georgia and can be served with process via its Registered Agent: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## FACTUAL BACKGROUND

5.      Plaintiff is a cosmetic brush manufacturer and retailer of ethically produced cosmetic brushes and beauty products for makeup and skincare.

6.     Defendant holds itself out as a corporation offering clean, sustainable products that deliver the best performance in cosmetics, personal care, and other beauty categories.

7.     On or around November 7, 2020, the parties entered into a Master Customer Agreement (hereinafter, "MCA") controlling the terms and conditions of Plaintiff's providing of certain goods and services to Defendant and Defendant's resulting duty to provide Plaintiff compensation for such goods and services.

8.     As part of the MCA, the parties agreed that all terms of Defendant's purchases would be pursuant to the terms and conditions of a quotation issued by Plaintiff to Defendant, the terms of the applicable Purchase Order, and the terms and conditions of the MCA.

9.     As part of the MCA, Defendant agreed that for any products it ordered from Plaintiff, it would pay the associated Purchase Order in full, without any offset, deduction, or delay within net 60 days or as per the terms indicated on the subject quotation.

10.    As part of the MCA, the parties agreed that no waivers, oral modifications, alterations, or amendments of the MCA would be binding unless reduced to a writing referencing the MCA and signed by authorized representatives of each party.

11.     In or around March 2022, Defendant contacted Plaintiff to purchase certain cosmetic and beauty products pursuant to the MCA, specifically, cosmetic brushes.

12.     Pursuant to those discussions and the MCA, Defendant agreed to pay Plaintiff the total sum of $1,170,964.80 for foundation brushes, concealer brushes, cheek brushes, and eyeshadow brushes (collectively, the "Brushes").  *See* Exhibit "A" attached hereto evidencing invoices for the Brushes (collectively, the "Invoices").

13.     Pursuant to the terms and conditions of the applicable Purchase Orders and the terms and conditions of the MCA, Defendant was required to pay 50% of the total sum of the purchase price (*i.e.*, $585,482.40) upon placing the applicable Purchase Order (the "Deposit") and was required to pay the remaining 50% balance of the total sum of the purchase price (*i.e.*, $585,482.40) prior to shipment of the Brushes (the "Balance Due").

14.     In or around March 2022, pursuant to the terms and conditions of the applicable Purchase Orders and the terms and conditions of the MCA, Defendant paid the Deposit (*i.e.*, $585,482.40) to Plaintiff when it placed the applicable Purchase Orders for the Brushes.

15.     In or around August 2022, Plaintiff manufactured the Brushes pursuant to the appliable Purchase Orders and stored the Brushes in its warehouse, intending to ship same to Defendant upon its payment of the Balance Due.

16.     In or around August 2022, Plaintiff advised Defendant that the Brushes were ready for immediate shipment and would be delivered as soon as Defendant paid the required and contracted Balance Due.

17.     In or around September 2022, and having not received any payment from Defendant in connection with the Invoices reflecting the Balance Due, Plaintiff requested that Defendant immediately provide a status update as to when such payments would be received.

18.     In response, Defendant indicated to Plaintiff, via its Chief Executive Officer Caroline Hadfield ("CEO"), that the "brushes are doing extremely well" and that it understood that Plaintiff was "going to be a part of the payments that went out today" as a "nice surprise."

19.     However, no such payments were received by Plaintiff from Defendant.

20.     Defendant, again through its CEO, would later represent to Plaintiff on September 14, 2022 that payment to satisfy the Balance Due would be made upon the receipt of a "first round of funding" that Defendant indicated it would receive later that same week.

21.     However, no such payments were ever received by Plaintiff from Defendant.

22.     In or around October 2022, and having still not received any payment from Defendant for the Balance Due, Plaintiff requested that Defendant immediately provide a status on when such payments would be received.

23.     In response, Defendant, through its CEO, indicated that "finance is backed up on their list of payments that (*sic*) we are still delayed in receiving a status on yours."

24.     In or around November 2022, Plaintiff contacted Defendant in connection with the Invoices that had not been paid pursuant to the MCA.

25.     Defendant did not dispute the amount owed, admitted that it had failed to pay the Invoices, but once again indicated that payment was forthcoming upon the receipt of funding that Defendant represented would be received on an expedient basis.

26.     On November 18, 2022, Plaintiff, relying on Defendant's repeated representations that certain funding would be used to satisfy the Invoices, agreed that "payment for all outstanding invoices will be made in full by February 2023" – including any invoices for products ordered by Defendant after November 2022

(with the aforementioned agreement, in conjunction with the MCA, being hereinafter collectively referred to as the "Agreements").

27. In December 2022, Plaintiff continued its communications with Defendant to seek payment of the Balance Due and as required per the Agreements.

28. Plaintiff indicated to Defendant that it would agree to provide additional cosmetic brushes, but only upon satisfaction of the Balance Due already owed under the Invoices pursuant to the Agreements.

29. On December 6, 2022, Plaintiff made it clear to Defendant that Defendant must pay "all outstanding invoices . . . in full by February 2023" and that the Invoices must be paid in order for Plaintiff to process Defendant's current and future orders of cosmetic brushes.

30. On December 7, 2022, Defendant indicated that it "shared" Plaintiff's payment requirement per the Agreements "with the team and they are working on it."

31. That same day, Plaintiff requested that Defendant "advise when payment has been issued so [it] could notify [its] A/R team and loop in Operations."

32. On December 8, 2022, Defendant represented to Plaintiff that it was "urgently working to process payment" as demanded by Plaintiff and as required by the Agreements.

33.     On December 14, 2022, Defendant requested that Plaintiff resend it the Invoices for its accounting department to "help with reconciliation" of the Balance Due.  Plaintiff provided Defendant the requested information within seven (7) hours of Defendant's request.

34.     On December 20, 2022, Plaintiff requested that Defendant "please provide an update on payment and also the updated POs to reflect the correct payment terms" pursuant to the Agreements.

35.     On January 4, 2023, Plaintiff requested an update as to satisfaction of the Balance Due, with Defendant responding that it did not "have any visibility into the below – [it] will check with [its] Finance team."

36.     Defendant did not communicate with Plaintiff again until January 17, 2023, when it indicated that "the team is working on payment details to resolve our balance, hope to get an update for you asap."

37.     On February 9, 2023, and having still not received any payment to satisfy any of the Balance Due and, with payments for all Invoices being due in February 2023 pursuant to the Agreements, Plaintiff contacted Defendant and indicated that it was "reaching to let you know that we need payment for **ALL** outstanding invoices in the next week and to get a confirmation from you on when we will receive payment.  As you know, payment for these outstanding invoices . . .

were due in late August/September 2022.  In the spirit of partnership, we were willing to allow [Defendant] to take the [Brushes] in January/February 2023.  This was with the understanding that we would receive updated information on what goods would ship in 2022 and updated POs to reflect ship dates no later than February 2023.  There has been little communication from your team, and we still haven't received what was agreed to . . . We've provided your team members, on several occasions, all the information they need to get these invoices paid and now need confirmation of payment date.  I've attached Past Due Statements for your reference – total we must receive is $585,482.40.  I need to hear back with confirmed payment date by tomorrow, 2/10."  (Emphasis in original).

38.    Having received no response, Plaintiff contacted Defendant again on February 14, 2023, indicating: "As you know, [Defendant's] failure to pay its outstanding invoices of $585,482.40 is a material breach of the [MCA].  In the spirit of partnership, we have made numerous good-faith efforts to resolve this matter and, if reciprocated, will continue our efforts to collaborate with you on a mutually acceptable plan to cure [Defendant's] default.  If you wish to resolve this matter, please contact me by February 16, 2023, so that we can avoid spending unnecessary time and money on attorneys.  If we do not hear back from you, we will have no choice but to immediately terminate our [MCA] and pursue all available legal

remedies to enforce our rights under the agreement to recover the past due amount as well all costs, damages, and expenses, including, but not limited to attorney's fees and other costs of litigation, arising from or relating to [Defendant's] breach.  Please consider this email as formal notice of [Defendant's] breach.  It is written without prejudice to any rights of [Plaintiff], all of which are expressly reserved, and without wavier, release, or acquiescence of any terms and conditions in the [MCA].  Moreover, we request that [Defendant] preserve all documents in its possession that would be potentially relevant to [Defendant's] breach and any potential legal action.  We look forward to hearing from you by February 16th."

39.   On February 15, 2023, Defendant responded through its CEO: ". . . we will come back to you."

40.   A week later, and having received no response from Defendant, Plaintiff once again contacted Defendant in good faith, stating: "We are disappointed that [Defendant] has not provided a substantive response to our February 14 notice of breach or taken any of the steps promised in our prior exchanges to make payment on the defaulted amount of $585,482.40.  As I stated in my prior email, in the spirit of partnership, we've been more than patient and proposed numerous opportunities to discuss a resolution to cure [Defendant's] default. Our good-faith efforts, however, were met with delay and non-payment.  Therefore, please consider this

the **FINAL NOTICE** of our efforts to amicably resolve this matter.  If [Defendant] does not come back to us with a confirmed payment date by **Friday, February 24**, you leave us no alternative but to immediately refer this matter to our litigation counsel to commence a lawsuit to seek appropriate relief for the full payment of the defaulted amount as well as finance charges, additional damages, attorneys' fees, court costs, and accrued interest. In addition, we reiterate our prior request for [Defendant] to comply with its obligations to preserve all relevant documents and communications related to this dispute. This email is written without prejudice to any rights of [Plaintiff], all of which are expressly reserved. We hope you appreciate the urgency and severity of this matter and take this final opportunity to resolve this matter prior to legal escalation."  (Emphasis in original).

41.     That same day, Defendant responded through its CEO: "As you may have seen today, [Defendant] solidified a strategic transaction this morning. Will come back to you Friday with payment plan . . ."

42.     However, Defendant did not contact Plaintiff or provide Plaintiff a proposed payment plan as represented.

43.     On March 6, 2023, Defendant, through its CEO, contacted Plaintiff and confirmed its failure to pay the Balance Due pursuant to the Agreements, attempting

to excuse its admitted breach as a result of additional attempts to obtain funding that would permit it to pay the Invoices in the "beginning of April."

44.     Defendant also stated its understanding that "this has not been an ideal situation and very frustrating for [Plaintiff]."

45.     As of the filing of this Complaint for Damages, Defendant has not paid the Balance Due pursuant to the Agreements, despite its representations and despite its clear and unambiguous legal duty under the Agreements and controlling law.

## COUNT I

### (Fraud in the Inducement)

46.     The factual and jurisdictional allegations in Paragraphs 1 through 45 are realleged and reincorporated as though fully set forth herein verbatim to the extent not inconsistent herewith.

47.     Defendant fraudulently induced Plaintiff to enter into and continue the above-referenced business relationship, including, but not limited to, misrepresenting its ability to pay the Invoices and/or efforts associated therewith in order to convince Plaintiff to manufacture the Brushes.

48.     In order to induce Plaintiff to enter into and continue the above-referenced business relationship, Defendant's employees and/or agents (including its CEO) represented/misrepresented the following:

a. Defendant's intention to pay the Invoices pursuant to the Agreements;

b. Defendant's efforts to obtain funding to pay the Invoices;

c. Defendant's procurement of funding to pay the Invoices; and

d. Defendant's efforts to pay the Invoices.

49.     Defendant's employees and agents (including its CEO) made these representations affirmatively or by failing to advise Plaintiff that Defendant could not pay the Invoices and/or would not be able to obtain the referenced funding when Defendant had a duty to speak.

50.     Defendant's employees and agents (including its CEO) knew, or should have known, that Defendant could not pay the Invoices and/or was unable to obtain the funding represented and, therefore, had knowledge of the falsity of its representations or, at the very least, had a reckless disregard for the truth or falsity of its representations.

51.     Defendant's employees and agents (including its CEO) knowingly made these false representations and/or omissions via the communications cited in this Complaint for Damages, the circumstances of which are fully described herein.

52.     Defendant's employees and/or agents also made false representations and/or omissions at other times, including during phone calls, conferences, email communications, and at other interactions between the parties.

53.     Defendant's representations were false and misleading.

54.     Defendant's representations were material to Plaintiff's decision to enter into and continue its business relationship with Defendant.

55.     Defendant either knew the representations made to Plaintiff were false, or it made the representations with reckless disregard for the truth.

56.     Defendant knowingly or recklessly intended for Plaintiff to rely on the representations in order to induce Plaintiff to enter into and continue the stated business relationship.

57.     Plaintiff was unknowing as to the falsity of Defendant's representations and by the exercise of due care could not have learned of the falsity of Defendant's representations.

58.     Plaintiff reasonably relied upon the representations made by Defendant and would not have entered into or continued any business relationship with Defendant, including its manufacture of the Brushes, but for those misrepresentations.

59.     Plaintiff had a right to rely upon the Defendant's representations, as the parties were engaged in a business transaction invoking duties of good faith and fair dealing.

60.     Defendant's fraudulent inducement is characterized by dishonesty in fact and/or unfair dealing.

61.     As a result of Defendant's false representations, and Plaintiff's reasonable reliance on them, Plaintiff entered into and continued its business relationship with Defendant.

62.     Because Defendant's representations were false, Plaintiff was induced to manufacture and store the Brushes for Defendant which were ultimately not paid for by Defendant.

63.     Plaintiff did not receive full compensation, value, or benefit for the Brushes it manufactured, stored, and agreed to sell to Defendant.

64.     As a direct result and proximate cause of Defendant's fraudulent inducement, Plaintiff has been injured and is entitled to the money owed by Defendant, with interest, and is additionally permitted to recover damages in such amount as may be proven at trial, including, but not limited to, actual, special, incidental, and consequential damages, attorney's fees, prejudgment interest, the costs of this action, and such other and further relief as the Court deems just and proper.

65.     Defendant's actions were willful, wanton, intentional, and with such reckless disregard for and conscious indifference to Plaintiff's rights and that Plaintiff is entitled to recover punitive damages in addition to its other damages.

## COUNT II

### (Negligent Misrepresentation)

66.     The factual and jurisdictional allegations in Paragraphs 1 through 65 are realleged and reincorporated as though fully set forth herein verbatim to the extent not inconsistent herewith.

67.     If Defendant alleges and attempts to prove that its fraudulent misrepresentations and omissions of material facts (as described above in Count I) were made unintentionally, then, in the alternative and at a minimum, Defendant negligently made such misrepresentations and omissions of material facts.

68.     Plaintiff is therefore entitled to the damages it has incurred because of Defendant's negligent misrepresentations, in an amount to be proven at trial.

## COUNT III

### (Breach of Contract)

69.     The factual and jurisdictional allegations in Paragraphs 1 through 68 are realleged and reincorporated as though fully set forth herein verbatim to the extent not inconsistent herewith.

70.   Plaintiff and Defendant entered into the Agreements referenced herein for Plaintiff's providing services and the Brushes to Defendant and Defendant's consequent duty to provide compensation to Plaintiff for same.

71.   The Agreements constitute enforceable contracts and Plaintiff has met all of its required obligations thereunder.

72.   Defendant failed to pay in full for Plaintiff's services and the Brushes, which constitutes a material breach of the Agreements with Plaintiff.

73.   Furthermore, Defendant breached the covenant of good faith and fair dealing implied as a term in all of the Agreements by acting in bad faith and/or failing to adhere to reasonable standards of commercial dealing within the trade.

74.   As a direct and proximate result of Defendant's material breaches, as described above, Plaintiff is owed substantial sums of money from Defendant for its services and the Brushes as evidenced by the Invoices attached hereto.

75.   Such sums include, but are not limited to, the Balance Due, as well as, pursuant to Section 6 of the MCA, "all costs and charges for or relating to . . . storage, insurance, and related items with regard" to the Brushes.

76.   As a direct and proximate cause of Defendant's breach of the Agreements, Plaintiff has been injured and is entitled to recover damages in such amount as may be proven at trial, including, but not limited to, actual damages in an

amount not less than $585,482.40, consequential damages, lost income and/or profits, attorney's fees, prejudgment interest, the costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT IV

### (Account Stated)

77.    The factual and jurisdictional allegations in Paragraphs 1 through 76 are realleged and reincorporated as though fully set forth herein verbatim to the extent not inconsistent herewith.

78.    Plaintiff and Defendant engaged in a business transaction pursuant to the Agreements.

79.    Plaintiff states that the principal amount of $585,482.40 is due from Defendant in connection with the Agreements and is correct.

80.    Plaintiff states that per diem interest of $144.36 is due from Defendant in connection with the Agreements and is correct.

81.    Through its request and acceptance of the services and Brushes manufactured by Plaintiff through the Agreements, and via its acknowledgement of the amount owed and its legal duty to compensate Plaintiff, Defendant made an express and/or implicit promise to pay the Balance Due to Plaintiff and Defendant is therefore liable for the amounts stated.

## COUNT V

### (Recovery of Attorney's Fees and Expenses)

82.     The factual and jurisdictional allegations in Paragraphs 1 through 81 are realleged and reincorporated as though fully set forth herein verbatim to the extent not inconsistent herewith.

83.     Paragraph 33 of the MCA states: "Should any action be brought to enforce this Agreement, upon the rendering of a final judgment, the losing party shall pay all costs, expenses and reasonable attorney's fees incurred by the prevailing party to enforce this Agreement."

84.     Based on the foregoing facts, Plaintiff is entitled to and therefore requests that Defendant pay Plaintiff's costs, expenses, and reasonable attorney's fees as the prevailing party in this civil action.

**WHEREFORE**, Plaintiff prays for the Court to award judgment in its favor and against Defendant as follows:

   a.  For an award to Plaintiff of its actual and consequential damages, loss of income and/or profits, storage fees, and other recoverable damages, both past and future, all in an amount in excess of $585,482.40 and all applicable interest;

   b.  for an award of punitive damages;

c.   for payment of its attorney's fees, costs, and expenses of this litigation;

d.   for pre and post judgment interest; and

e.   for such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of March, 2023.

**TAYLOR ENGLISH DUMA LLP**

/s/ Ann R. Schildhammer
Ann R. Schildhammer
Georgia Bar No. 600290
aschildhammer@taylorenglish.com
Joseph C. Sullivan
Georgia Bar No. 153098
jsullivan@taylorenglish.com

1600 Parkwood Circle - Suite 200
Atlanta, Georgia 30339
Telephone:   (770) 434-6868
Facsimile:    (770) 434-7376

*Attorneys for Plaintiff Anisa International, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the above and within was

provided to a Process Server to be served on Defendant below:

Amyris Clean Beauty, Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware 19808

Respectfully submitted this 23rd day of March, 2023.

**TAYLOR ENGLISH DUMA LLP**

/s/ Ann R. Schildhammer
Ann R. Schildhammer
Georgia Bar No. 600290
aschildhammer@taylorenglish.com
Joseph C. Sullivan
Georgia Bar No. 153098
jsullivan@taylorenglish.com

1600 Parkwood Circle - Suite 200
Atlanta, Georgia 30339
Telephone:   (770) 434-6868
Facsimile:    (770) 434-7376

*Attorneys for Plaintiff Anisa International, Inc.*